Aren Hamrick,

        Plaintiff,

v.                                       Civil No. 09-2177 (JNE/RLE)
                                             ORDER

Sally Beauty Supply, LLC,

        Defendant.

---

LeAnne D. Miller, Esq., Rajkowski Hansmeier Ltd., appeared for Plaintiff Aren Hamrick.

Holly M. Robbins, Esq., and Rhiannon C. Beckendorf, Esq., Littler Mendelson, PC, appeared for Defendant Sally Beauty Supply, LLC.

---

Aren Hamrick brought this action in state court alleging that Sally Beauty Supply, LLC, (Sally) discriminated against her on the basis of sex and disability in violation of the Minnesota Human Rights Act (MHRA). Sally removed the action to this Court and subsequently moved for summary judgment. For the reasons discussed below, the Court grants Sally's motion.

## I.     BACKGROUND

Sally is a retailer of professional beauty supplies that owns and operates more than 2700 stores worldwide. Hamrick began working at a Sally store in St. Cloud, Minnesota, on June 1, 2006, as an inside sales employee responsible for greeting customers, offering and explaining products, and maintaining stock and store cleanliness.

Hamrick became pregnant in August 2006 and informed Sharon Roses, her supervisor, the following month. Roses was happy for Hamrick and helped her schedule work shifts around her pregnancy-related doctors' appointments. Hamrick reduced her hours or stopped taking extra shifts during her fifth month of pregnancy because she experienced dizziness. Thereafter, she worked about twenty hours per week. No one at the Sally store or its corporate office said

anything negative to Hamrick about her pregnancy.  Other than general conversations with

Roses, Hamrick did not speak with anyone at Sally about arranging leave following the birth of

her child.

Sally employees are not entitled to vacation benefits during their first year of

employment, and all absences exceeding three days must be covered by one of Sally's leave-of-

absence policies.  Sally has two policies under which employees may qualify for maternity leave.

Sally's employee handbook describes Type FM Leave as follows:

> You are eligible to take up to 12 weeks of Type FM Leave within any 12-month
> period and be restored to the same or an equivalent position upon your return
> from leave IF you: (1) have worked for the Company for at least 12 months, <u>and</u>
> (2) for at least 1250 hours during such 12-month period <u>and</u> (3) work at a location
> where there are at least 50 Company employees within 75 miles of that location.[1]

The policy requires employees to give at least 30 days written notice if the need for Type FM

Leave is foreseeable, and employees must supply appropriate medical certification within 21

days of beginning their leave.

Sally also offers Type MD Leave, which is available "to an employee who does not

qualify for Type FM Leave, provided the employee: (1) is regularly scheduled to work at least 35

hours per week, <u>and</u> (2) has completed at least 3 months of service."  Employees must provide

written notice at least 30 days in advance as well as appropriate medical certification.

Hamrick gave birth on May 16, 2007, after her labor was induced.  She knew the date of

her delivery beforehand and was not scheduled to work on that date.  Hamrick did not identify

any other dates that she would not be able to work.  Roses, however, did not schedule Hamrick

to work after her due date.  Hamrick required an episiotomy during the delivery.  This resulted in

---

[1]     Type FM Leave follows the requirements of the Family Medical Leave Act.  *See* 29
U.S.C. § 2611(2) (2006).

stitches, swelling, and difficulty moving. Hamrick's doctor told her to avoid heavy lifting, to rest, and to gradually increase her activity in the six weeks following her delivery.[2] Hamrick could not wear normal clothing immediately after giving birth, it took at least one week for her to heal from the episiotomy, and she had difficulty lifting her son. She experienced no other birth-related complications.

Hamrick apparently continued to work for Sally after the birth of her son by taking boxes of paperwork from the store to her home where she sorted and filed it in preparation for an upcoming audit at the store. Hamrick did not fill out a time sheet but would instead call her hours into the store. According to Hamrick, Roses suggested that she do the filing at home so that she would be eligible for leave. On May 22, 2007, Hamrick worked approximately three hours of "light-duty" at the store. Roses allowed her to do this because she had just given birth, but Roses testified that she would not have allowed Hamrick to work "light-duty" for an extended period of time.

Hamrick intended to take maternity leave beginning on June 1, 2007, because that is when she thought she would be eligible for leave. On May 29, 2007, Hamrick went to the Sally store and called Tiffany Pennington, a leave of absence administrator at Sally's corporate office in Denton, Texas, to set up her maternity leave. Hamrick did not know Pennington, had never spoken to her previously, and has not spoken with her since that date. Pennington reviewed Hamrick's employment records to determine whether she was eligible for Type FM Leave, Type MD Leave, or any other leave available under Minnesota law. Pennington informed Hamrick that she was not eligible for leave because she had not worked at Sally for one year, had not worked at least 1250 hours, and was not regularly scheduled to work at least 35 hours per week.

---

[2] Sally did not request and Hamrick did not provide documentation of her doctor's orders.

According to Pennington, Sally's records indicated that Hamrick had not worked at the store since May 22, 2007, because she had not "punched in" since that date. Because Sally's records showed that Hamrick had been absent more than three days, Pennington determined that she had been on an unauthorized leave of absence under Sally's policy and informed Hamrick that she had been "administratively separated." Pennington told Hamrick that she should not be in the store and that she needed to leave the building. Pennington also told Hamrick that she could reapply for her position in six weeks but that she would not qualify for upcoming reviews and raises, and her "symbols of success" points would be gone.[3] Hamrick asked if there was anything she could do to qualify for maternity leave, and Pennington responded that there was not. According to Hamrick, she "pleaded with [Pennington] to try to figure out some way that [she] would have time to heal and still have a job." Pennington also allegedly told Hamrick that Hamrick was disabled. Hamrick was upset after her conversation with Pennington and left the store without talking to anyone.

Hamrick filed a charge of discrimination with the Minnesota Department of Human Rights, which issued a finding of probable cause. Hamrick then brought this action on July 27, 2009.

## II.  DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must

---

[3]     Sally employees earn "symbols of success" points based on their sales. Those points can be redeemed for merchandise.

identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.    Sex discrimination

Hamrick contends that Sally violated the MHRA's prohibition on sex discrimination by discharging her because of her pregnancy and childbirth. Sally argues that Hamrick has not established a prima facie case of discrimination or shown that its legitimate, non-discriminatory reason for her "administrative separation" was pretext for unlawful discrimination.

The MHRA prohibits an employer from discharging an employee "because of . . . sex," which includes "pregnancy" and "childbirth." *Roberts v. Park Nicollet Health Servs.*, 528 F.3d 1123, 1127 (8th Cir. 2008) (citing Minn. Stat. §§ 363A.03, subd. 42, 363A.08, subd. 2). In cases such as this, where there is no direct evidence of discriminatory intent, a court analyzes a claim for sex discrimination under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bergstrom-Ek v. Best Oil Co.*, 153 F.3d 851, 857 (8th Cir. 1998). Under that framework, the employee must first establish a prima facie case of discrimination by showing that she was (1) a member of a protected group, (2) qualified for her position, and (3) discharged under circumstances giving rise to an inference of discrimination. *Id.* The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason

for the adverse employment action. *Id.* The employee must then bring forth evidence indicating that the employer's legitimate, non-discriminatory reason was pretext for unlawful discrimination. *Id.* at 857-58.

In this case, assuming that Hamrick can establish a prima facie case, she has not met her burden of showing that Sally's legitimate, non-discriminatory reason for her "administrative separation" was pretext for unlawful sex discrimination. The records Pennington reviewed while speaking on the telephone with Hamrick on May 29, 2007, indicated that Hamrick had not worked for one week. Pennington believed that Hamrick's absence from work constituted an unauthorized leave of absence under Sally's policy because Hamrick was not qualified for Type FM Leave, Type MD Leave, or any other leave program. As a result, Pennington informed Hamrick that she had been "administratively separated," that she had to leave the store, and that she could reapply for her position in six weeks. Pennington's actions do not support a finding that Hamrick's "administrative separation" was pretext for unlawful sex discrimination.[4] Therefore, because Hamrick has brought forth no other evidence of pretext, summary judgment on this claim is warranted.

## B.     Disability discrimination

Hamrick also claims that Sally violated the MHRA by terminating her and by failing to accommodate her known disability. Sally argues that Hamrick's discriminatory-discharge and

---

[4]     It is unclear whether Sally's policy, which defines all absences exceeding three days to be a leave of absence, applies to all absences or only absences from otherwise scheduled workdays. If the policy applies in the latter situation only, Hamrick was apparently not on an unauthorized leave of absence because Roses had not scheduled her to work. Nevertheless, even if Pennington erroneously believed that Hamrick was on an unauthorized leave of absence, Pennington's conduct based upon that belief does not support a finding of pretext. *Cf. Soto v. Core-Mark Int'l, Inc.*, 521 F.3d 837, 842 (8th Cir. 2008) ("In determining whether a plaintiff has produced sufficient evidence of pretext, the key question is not whether the stated basis for termination actually occurred, but whether the defendant believed it to have occurred.").

failure-to-accommodate claims fail because no evidence supports a finding that Hamrick was disabled under the MHRA.

An employer violates the MHRA by discharging an employee because of an employee's disability. Minn. Stat. § 363A.08, subd. 2(2). An employer also violates the MHRA by failing to reasonably accommodate "the known disability of a qualified disabled person." *Id.* § 363A.08, subd. 6(a). To maintain a claim for discriminatory discharge or failure to accommodate, an employee must establish that she was disabled. *See Liljedahl v. Ryder Student Transp. Servs.*, 341 F.3d 836, 841-42 (8th Cir. 2003). "A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." Minn. Stat. § 363A.03, subd. 12. The determination of whether a person is materially limited in a major life activity turns on the nature and severity of the impairment, its duration or anticipated duration, and its long-term impact. *See Maziarka v. Mills Fleet Farm, Inc.*, 245 F.3d 675, 679 (8th Cir. 2001) (citing 29 C.F.R. § 1630.2(j)(2)(i)-(iii)); *see also Mallon v. U.S. Physical Therapy, Ltd.*, 395 F. Supp. 2d 810, 817 n.1 (D. Minn. 2005) ("Courts . . . use the relevant [Americans with Disabilities Act] regulations as a guide for determining whether an impairment materially limits a major life activity.").

Hamrick first contends that she was disabled at the time of her termination because the lingering effects of the episiotomy materially limited her performance of the major life activities of lifting and working. Any limitation on lifting experienced by Hamrick was temporary and lasted for a short duration in the immediate weeks following the birth of her child. Such minimal and temporary restrictions do not constitute a material limitation of a major life activity. *Cf. Brunko v. Mercy Hosp.*, 260 F.3d 939, 941-42 (8th Cir. 2001) ("Although lifting itself is

identified as a major life activity, this court has held that a general lifting restriction, without more, is insufficient to constitute a disability within the meaning of the [Americans with Disabilities Act].").  Similarly, Hamrick's temporary inability to perform her job at Sally does not constitute a material limitation of a major life activity.  An individual is not materially limited in the major life activity of working simply because she could not perform a particular job. *Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 440 (8th Cir. 2007).  Rather, to establish a material limitation, Hamrick must have been precluded from performing "a class of jobs or a broad range of jobs."  *Id.* (quotation marks omitted); *see also Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 543 (Minn. 2001) (identifying factors to consider in determining whether ability to work is materially limited).  Hamrick has presented no evidence indicating that her temporary limitations were so restrictive.  Accordingly, Hamrick cannot establish that she was materially limited in the major life activities of lifting and working.

Hamrick next argues that Sally regarded her as disabled because Pennington allegedly told her on the telephone that she was disabled.  Even if Pennington told Hamrick that she was disabled, no evidence indicates that Pennington regarded Hamrick as meeting the legal definition of disabled under the MHRA.  In other words, no evidence shows that Pennington "regarded [Hamrick] as having an impairment that materially limited [her] from working [and lifting]." *McLain v. Andersen Corp.*, 567 F.3d 956, 968 (8th Cir. 2009).  Indeed, no evidence shows that Pennington knew that Hamrick was recovering from an episiotomy or had certain temporary medical restrictions.  Hamrick points to no other evidence showing that Sally regarded her as disabled.  Therefore, because Hamrick cannot establish that she was disabled under the MHRA, the Court grants summary judgment on her claims for disability discrimination.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.    Sally's Motion for Summary Judgment [Docket No. 14] is GRANTED.

2.    This case is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 9, 2010

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge